IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEOFFREY ADAMS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action No. 04-213J |
| ) | |
| MARDI HUNSBERGER; GARY HILER; ) | Judge Kim R. Gibson/ |
| PENNSYLVANIA DEPARTMENT OF ) | Magistrate Judge Amy Reynolds Hay |
| CORRECTIONS; IVORY BARNETT and ) | |
| ROBERT BITNER, ) | |
| ) | |
| Defendants ) | Re Dkt. [38] |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is recommended that defendants' motion for summary judgment be granted.

II. REPORT

Proceeding pro se and as a pauper, Geoffrey Adams ("Plaintiff"), a state prisoner, is serving a sentence of 15-30 years. Dkt. [30]. He has filed a lawsuit against the Pennsylvania Department of Corrections ("DOC") and several employees thereof. Plaintiff alleges that they violated his rights by finding him guilty of a false misconduct in February 2004 and that they did so in alleged retaliation for Plaintiff's filing of a habeas petition in June of 2000. The Defendants have filed a motion for summary judgment which, for the reasons stated below, should be granted.

*Procedural and Factual History*

The operative complaint is the amended complaint. Dkt. [24]. The amended complaint is sworn to and will be treated as an affidavit for summary judgment purposes.

Plaintiff alleges that on February 9, 2004, while he was confined in the State Correctional Institution at Laurel Highlands (SCI-Laurel Highlands), a non-defendant

corrections officer, Captain Chero, issued him a false misconduct for fighting, based on information provided by a confidential informant. Dkt. [24] at 2, ¶ 1. Plaintiff states that the first version of this misconduct was dismissed without prejudice by the hearing examiner, Defendant Barnett, but that the non-defendant corrections officer was permitted to re-file a corrected misconduct. Id. Furthermore, the record shows that the inmate with whom Plaintiff allegedly fought, Roger Stevens, confirmed that they fought. Dkt. [38-2] at 2. Inmate Stevens stated to the reporting officer that Plaintiff threw a "round house" kick at Stevens. Id.

Plaintiff states that at the subsequent February 17, 2004 misconduct hearing, he had requested as a witness the prison doctor who Plaintiff alleges would testify that due to his disability of having one leg shorter than another, Plaintiff could not have thrown a round house kick. Dkt. [24] at 2, ¶ 1.b. Plaintiff contends that he made the witness request to the hearing examiner, Defendant Barnett, but Barnett denied the request. Id. Plaintiff asserts that when he asked why he could not have his medical witness, Defendant Barnett allegedly stated, "your [sic] not getting your witness because you have a pending federal action against the department of corrections," i.e., the habeas petition filed by Plaintiff at Civil Action No. 00-163J. Id. The record indicates that "the [Hearing] Examiner did not have your [i.e., Plaintiff's] request for witnesses form at the hearing and you failed to raise the issue of witnesses at the hearing." Dkt. [38-2] at 16.

Defendant Barnett found Plaintiff guilty of the misconduct charges, and sentenced him to 30 days disciplinary confinement in the Restricted Housing Unit (RHU). Id. Plaintiff contends that this misconduct and the resulting RHU sentence caused him to lose his prison job, caused an increase in his custody level from a Level 2 (L2) to a Level 4 (L4), caused him to incur an additional 60 days in administrative custody, and caused him to be transferred to the State Correctional Institution at Frackville (SCI-Frackville). Dkt. [24] at ¶¶ 1; 5.

Plaintiff states that he appealed this misconduct conviction to the Prison Review Committee ("PRC"), which was comprised of three members, of which defendant Hiler was only one member, and admits that on February 20, 2004, the PRC conducted the review and upheld defendant Barnett's findings.  Dkt. [24] at 4, ¶ 2.  Plaintiff avers that on February 9, 2004, when Plaintiff asked Defendant Hiler about why he was found guilty of the misconduct, Defendant Hiler is alleged to have said, "[y]ou are a trouble maker I'm sick and tired of you filing lawsuits on us, you got other inmates filing lawsuits on us, we got denied in Federal Court in another inmate[']s lawsuit [i.e., a civil rights action filed by Kevin Murtha which raised the same issue as Petitioner had raised in his habeas petition, namely, whether it was constitutional to require that a prisoner admit to his sexual misdeeds as part of a sex offenders' treatment program which was required by the Parole Board[1]] because of you, if you don't drop that lawsuit I'm kicking you out of my jail; you know we don't want you here this camp is for white people only . . . ."  Dkt. 24 at 4, ¶ 2.a.

Plaintiff states that he appealed the misconduct and PRC appeal denial to Superintendent Hunsberger on February 18, 2004.  Dkt. [24] at 7, ¶ 3.  Plaintiff admits that Defendant Hunsberger also upheld the misconduct conviction on February 26, 2004. Plaintiff avers that around the week of Monday February 23, 2004, he saw Defendant Hunsberger and asked her why he was found guilty of the misconduct and why the PRC upheld his guilt and she is alleged to have said to him, "see what happens when you sue; I hope your [sic] satisfied because I won't be until your [sic] gone . . . . "  Dkt. 24 at 8, ¶ 3.f.

---

[1] See Dkt. 22-2 at 4 - 6 (Magistrate Judge Pesto's R&R in the Murtha case).

Plaintiff avers that he next appealed the misconduct conviction to final review with Chief Hearing Examiner, Defendant Bitner, on February 27, 2004. Dkt. 24 at 8, ¶ 4. Plaintiff again admits that Defendant Bitner also upheld the misconduct conviction. Id.[2]

Plaintiff also avers that he filed a petition for writ of mandamus in the Commonwealth Court from Defendant Bitner's adverse decision. He attached the Order of the Commonwealth Court denying his mandamus petition to his original complaint. Dkt. 4 (last page). That order reads in part as follows:

> Petitioner essentially alleges that in connection with a misconduct hearing he was denied the right to call a witness and a final appeal and that the misconduct on his prison record has affected his custody level and access to medical treatment, paroled status, and privileges. He seeks an order directing respondent to conduct a final appeal and dismiss the misconduct. This court lacks appellate jurisdiction over an internal corrections tribunal and lacks original jurisdiction where the claim does not implicate a constitutional violation. Petitioner has not identified any personal or property interest not limited by corrections regulations that has been affected by the misconduct. Id.; see Sandin v. Conner, 5125 U.S. 472 (1995). Morever, attached to petitioner's petition for review is the final review decision that petitioner allegedly was denied.

Dkt. 4, last page (some citations omitted).

Plaintiff alleges in his amended complaint that the foregoing deprived him of procedural due process in violation of the Fourteenth Amendment and deprived him of his First Amendment right to be free of retaliation. The Defendants have moved for summary judgment, Dkt. [38], with evidentiary materials appended, and have filed a brief in support. Dkt. [39]. Plaintiff filed a

---

[2] Plaintiff also alleges that once transferred to SCI-Frackville, he was subjected to unlawful conditions of confinement inasmuch as there is "forced moist/damp air for ventilation" there that aggravates his arthritis. Dkt. [24] at 9, ¶ 5. Plaintiff also contends that his placement in SCI-Frackville caused him to be denied adequate medical care for cysts on his arms and legs. Id. Plaintiff's complaints about SCI-Frackville fail to state a claim against the current individual defendants insofar as none of them was or is employed there. To the extent that Plaintiff complains the transfer was retaliatory or a denial of procedural due process, these claims are addressed below.

4

response. Dkt. [45]. In addition, Plaintiff has filed two supplemental responses. Dkt. Nos. [48] & [49].[3]

*Legal Standard*

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted) (emphasis in original). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097,

---

[3] To the extent that Plaintiff raises claims in the supplemental responses that were not raised in the amended complaint, such claims are not cognizable. Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading."). Accord Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

*Discussion*

### DOC Is Not a Person; Has 11th Amendment Immunity

The first issue raised by the Defendants is that DOC is entitled to summary judgment because it is not a person within the meaning of Section 1983 and is entitled to sovereign immunity. This court agrees that DOC does not constitute a "person" within the meaning of Section 1983 and, therefore, cannot be sued thereunder. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Williams v. Pennsylvania, Dept. of Corrections, 146 Fed.Appx. 554 (3d Cir. 2005)(affirming judgment of District Court granting summary judgment to DOC because it was not a "person" for purposes of Section 1983). In the alternative, DOC is entitled to summary judgment as to all claims (other than the ADA claim) because of its Eleventh Amendment immunity. In Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000), the court succinctly summarized well established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).
> ....
> The DOC is an arm or agency of the Commonwealth. Weston v. Commonwealth of Pa. Dep't of Corrections, No. CIV.A. 98-3899, 1998 WL 695352, at *3 (E.D.Pa. Sept. 29, 1998) ("It is well settled that the DOC is a state agency entitled to Eleventh Amendment immunity, in the absence of Pennsylvania's consent to be sued."). Thus, a suit against the DOC is, in essence, a suit against the Commonwealth and is therefore barred by the Eleventh Amendment. See Hunter v. Commonwealth of Pennsylvania Dep't of Corrections, 42 F.Supp.2d 542, 547 (E.D.Pa.1999).

No exceptions to the Eleventh Amendment immunity are applicable here as to any of Plaintiff's Section 1983 claims. Pennsylvania has not consented to be sued. Wilson v. Vaughn, No. 93-C.V.-6020, 1996 WL 426538, at *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)). Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. See Smith v. Luciani, No. 97-3613, 1998 WL 151803, at *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table).

However, as to Plaintiff's ADA claims, Eleventh Amendment immunity does not shield DOC. See, e.g. Tennessee v. Lane, 541 U.S. 509 (2004)(Congress validly abrogated States' Eleventh Amendment immunity under Title II of the ADA). Nevertheless as discussed immediately below, Plaintiff fails to sustain his burden to show a violation of Title II of the ADA.

### **Americans with Disabilities Act**

Plaintiff invokes the ADA in his amended complaint. However, he does not make clear what his claim is under the ADA. Plaintiff complains that Defendant Barnett's "actions [in denying him his witness and finding him guilty of the misconduct" caused the Plaintiff to be denied benefits and subject[ed] him to discrimination by the Pennsylvania Dept[.] of corrections under the ADA[.]" Dkt. [24] at 3. What is clear is that Plaintiff is bringing his ADA claim under Title II of the ADA. Id. at 3, ¶ 1.g. ("Title II of the ADA provides . . .").

As explained by the Supreme Court

> Title II, §§ 12131-12134, prohibits any public entity from discriminating against "qualified" persons with disabilities in the provision or operation of public services, programs, or activities. The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. § 12131(1). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2).

7

Tennessee v. Lane, 541 U.S. at 517.  As to the natural person defendants, i.e., those other than DOC, Plaintiff has no claim against them under the ADA because they do not qualify as a "public entity."  See, e.g., Carrasquillo v. City of New York, 324 F.Supp.2d 428, 441 (S.D.N.Y. 2004)("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities.")(collecting cases).

Even if it were otherwise, Plaintiff's ADA claims fail against all of the Defendants because he has failed to adduce evidence to support each element of a prima facie case under the ADA.  As explained in Jones v. City of Monroe, MI, 341 F.3d 474, 477 (6th Cir. 2003), "[t]o make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability."  Plaintiff's ADA claims fail because Plaintiff's only allegations and averments establish that he was denied his medical witness, or found guilty of the misconduct or shipped out of SCI-Laurel Highlands or given a higher custody level, not because of his disability but because the Defendants were retaliating against him for his habeas petition.  There is absolutely no evidence of Plaintiff being discriminated against based upon his disability.  Hence, the Defendants are entitled to summary judgment on the ADA claims.

### Due Process Claims

Plaintiff claims that the defendants deprived him of a liberty interest without procedural due process.  A procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause of which he has been deprived and, if so, the second question is whether the process afforded the complaining party to deprive him of that interest comported with constitutional requirements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

The deprivations Plaintiff suffered are his placement in disciplinary custody for 30 days and then his placement in administrative custody for nearly 60 days, his increase in security classification and his transfer from SCI-Laurel Highlands to SCI-Frackville.

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983).  There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to Disciplinary or Administrative Custody. See Sandin v. Conner, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987)("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").  Plaintiff has no liberty interest arising directly from the Due Process clause that prevents his placement in the RHU under Administrative or Disciplinary Custody. Hence, the only other source of a liberty interest could arise from state law.

Addressing the issue of state created liberty interests, the United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 483.

Here, Plaintiff was placed in disciplinary custody and administrative custody for no more than 90 days. Such a short duration in Administrative and Disciplinary custody does not, as a matter of law, constitute a liberty interest. See, e.g., Torres v. Fauver, 292 F.3d 141, 150 (3d

9

Cir. 2002) (disciplinary detention for 15 days and administrative custody for 120 days did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months in the RHU did not implicate a protected liberty interest).  Hence, even if the procedures utilized were flawed in Plaintiff's estimation, or were, in fact flawed, because Plaintiff was deprived of no liberty interest by his stay in the heightened custody status, he was not constitutionally entitled to any procedure and therefore not deprived of a liberty interest without due process.

Neither does Plaintiff's transfer from one institution to another implicate any protected liberty interest stemming either directly from the Constitution or from state law. The due process clause of the Fourteenth Amendment does not itself create such a liberty interest. Meachum v. Fano, 427 U.S. 215, 224 - 25 (1976).  Nor does the law of the Commonwealth create such a liberty interest.  Nichelson v. Redwine, No. Civ. A. 99-1769, 2000 WL 1599246, at *2  (E.D. Pa. Oct. 26, 2000)(post Sandin case holding that "[n]either the Due Process Clause nor the laws of Pennsylvania give a convict a protected liberty interest in remaining in any particular housing status, in any particular state prison, or in any particular housing area.").  See also 37 Pa.Code § 93.11(a)("No inmate shall have a right to be housed in a particular institution or in a particular area within an institution.").

Lastly, neither does Plaintiff's increase in custody level or security classification implicate a liberty interest.  Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th  Cir.1987) ("a prisoner has no constitutional right to a particular classification status."); Hartline v. Stewart, 131 F.3d 146 (Table), 1997 WL 734973, at *1 (9th Cir.1997) ("Hartline has no constitutional right to a specific security classification. . . ."); Heim v. Crabtree, 89 F.3d  845 (9th Cir. 1996) (Table), 1996 WL 217909, at *1 n.2 (9th Cir. 1996) ("Heim does not have a constitutional right not to be transferred . . . or to retain a particular classification status") (citations omitted);  Weatherall v.

Scherbarth, 208 F.3d 228 (Table), 2000 WL 223576, at *1 (10th Cir. 2000) ("The United States Constitution does not entitle an inmate to any particular degree of liberty in prison; thus, changes to an inmate's prison classification do not involve deprivations of liberty."). Cf. Meachum v. Fano, 427 U.S. 215, 224 (1976) ("The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.").[4]

### *Retaliation Claims*

The record contains copies of all of Plaintiff's appeals from his misconduct and from the PRC and from the Superintendent. Dkt. 38-2 at 6-24  We find that Plaintiff never raised a claim in the course of exhausting his administrative remedies, i.e., during the appeal of the misconduct, that the misconduct and that the alleged actions of all of the actors, including Barnett, Hiler, Hunsberger, constituted retaliation for Plaintiff's filing his habeas petition in June 2000.  Hence, we find that the claim of retaliation is unexhausted and that the Defendants are entitled to summary judgment based thereon. See, e.g., Jones v. Bock, 127 S.Ct. 910, 923 (2007)("All agree that no unexhausted claim may be considered."); Vazquez v. Ragonese, __ Fed. Appx. __, 2007 WL 1294680, at *1 (3d Cir. 2007)(the PLRA "prohibits an inmate from bringing a civil

---

[4] As a consequence of his being found guilty of the misconduct, Plaintiff also lost his prison job as a janitor.  However, it has long been established that "[a]n inmate does not have a protected liberty or property interest in continued prison employment." Wilkins v. Bittenbender, 2006 WL 860140, *9 (M.D.Pa. March 31, 2006) (citing, James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.)); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975).

rights suit alleging specific acts of unconstitutional conduct by prison officials until the inmate has exhausted available administrative remedies.").[5]

**Eighth Amendment**

Defendants note that Plaintiff does not invoke the Eighth Amendment in his amended complaint. The Court agrees that Plaintiff, who has some experience litigating, clearly did not invoke the Eighth Amendment. Nevertheless, the Defendants addressed the Eighth Amendment for the sake of thoroughness. In his response to the summary judgment motion , Plaintiff argues that he has an Eighth Amendment claim, however, his arguments are not clear. For example, under his argument concerning an Eighth Amendment denial of medical care, Plaintiff asserts that "defendant Hunsberger denied the plaintiff his adequate medical care to his 'serious medical need' and violated the Americans with disabilities Act in the course of participating in a conspiratorially planned series of disciplinary actions as retaliation to the plaintiff for initiating protected conduct in the form of complaints filed in this Court against the defendants in violation of plaintiff[']s Eighth and Fourteenth Amendments." Dkt. 45 at 12. The Court finds that this

---

[5] While it is true that the Moving Defendants did not seek summary judgment based upon Plaintiff's failure to exhaust, they did raise the defense in their answer to the amended complaint, Dkt. [25] at 2. Moreover, a District Court has the inherent authority to grant summary judgment sua sponte so long as the party opposing summary judgment has notice and an opportunity to be heard concerning the proposed basis for the sua sponte grant of summary judgment. Canell v. Bradshaw, 97 F.3d 1458, at **5 (Table, Text available in Westlaw), (9th Cir. 1996) (unpublished)("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues."). See also Celotex, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). This report and recommendation can serve as the necessary notice; and the opportunity to object, provides Plaintiff with the opportunity to present any further evidence he may have with respect to this issue. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims. Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report.  Thus, Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, at *1 (6th Cir. 1998)(same).

allegation is fatally lacking any specificity and wholly conclusory, as are all his references to the Eighth Amendment in his response.

The Court finds that Plaintiff has failed to adduce evidence as to either the objective or subjective prong of an Eighth Amendment claim.  Even with respect to an allegation that he was denied some meals in the RHU, perhaps, his most promising Eighth Amendment claim, as the Defendants point out, he does not specify the number of instances when this occurred, nor does he allege that he went without food for any length of time and he clearly does not allege that any of the named defendants in this suit personally denied him food, rather, he alleges that some of the defendants knew and failed to remedy the situation.  This is insufficient.  See, e.g., Dunham v. Baker, 2007 WL 881958, (C.D.Ill.  March 21, 2007)("the defendants point out that the Seventh Circuit has held that the denial of food is not a per se violation of the Eighth Amendment.  Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999).  Instead, the court 'must assess the amount and duration of the deprivation.'  Id.  'A violation exists when the denials are so frequent that the inmate is not being provided with a 'nutritionally adequate diet.'  Cole v. Litscher, 2005 WL 627791 at 10 (W.D. Wis 2005), quoting Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996). The plaintiff has failed to make this showing.").  Given that it is Plaintiff's burden to establish an Eighth Amendment violation,[6] his lack of evidence as to the frequency and duration of the denial of food is fatal to his claim.  The Defendants are entitled to summary judgment on any of Plaintiff's putative Eighth Amendment claims.

Hence, for all of the foregoing reasons, the Defendants are entitled to summary judgment as to all of Plaintiff's claims.

---

[6] The plaintiff bears the burden of proving both the objective and subjective components of an Eighth Amendment claim.  See, e.g., Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

13

III.      <u>CONCLUSION</u>

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                         Respectfully submitted,

                                         <u>/s/  *Amy Reynolds Hay*</u>
                                         United States Magistrate Judge

Dated:  4 September, 2007

cc:      The Honorable Kim R. Gibson
         United States District Judge

         Geoffrey Adams
         AJ-2049
         SCI Frackville
         1111 Altamont Boulevard
         Frackville, PA 17931

         Mariah Passarelli, Esquire
         by Notice of Electronic Filing